UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JUSTIN CHRISTOPHER SMITH,       )
                                )
                  Movant,       )
                                )
v.                              )     Civil No. 2:21-cv-_____
                                )     Crim No. 2:18-cr-00086-RLJ-DHI-1
UNITED STATES OF AMERICA,       )
                                )
                  Respondent.   )

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, JUSTIN CHRISTOPHER SMITH ("Smith"), appearing *pro se*, and in support of this motion would show as follows:

## I. JURISDICTION

Smith is timely filing a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing § 2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562 (1994).

1

## II. <u>STATEMENT OF THE GROUND FOR RELIEF</u>

A.      Whether counsel's failure to: (1) Communicate with Smith and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) Conduct an adequate and independent pretrial investigation; (3) Attempt to negotiate a favorable Plea Agreement; and (4) Properly challenge Smith's ACCA enhancement deprived Smith of effective assistance of counsel under the Sixth Amendment of the Constitution of the United States.

B.      Whether Smith's sentence exceeds the statutory maximum of ten (10) years due to a misapplied ACCA enhancement.

## III. <u>STATEMENT OF THE CASE</u>

### A.      <u>Procedural Background</u>

On August 13, 2019, a grand jury sitting in the United States District Court for the Eastern District of Tennessee, Greeneville Division, returned a two (2) count First Superseding Indictment charging Smith. See Doc. 54.[1] Count 1s charged Smith with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(1). *Id.* Count 2s charged Smith with Unlawful User of Controlled Substances in Possession of a

---

[1]      "Doc." refers to the Docket Report in the United States District Court for the Eastern District of Tennessee, Greeneville Division  in   Criminal No. 2:18-cr-00086-RLJ-DHI-1, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

2

Firearm, in violation of 18 U.S.C. § 922(g)(3). *Id.*

On August 27, 2019, a Change of Plea and Sentencing Hearing was held, and Smith entered a plea of guilty to Count 1s of the First Superseding Indictment, pursuant to a written Plea Agreement. See Doc. 58. Smith was sentenced to a term of 180 months' imprisonment, 5 years Supervised Release, no Fine or Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 63, 64.

On September 1, 2019, Smith timely filed a Notice of Appeal. See Doc. 66.

On June 12, 2020, the United States Court of Appeals for the Sixth Circuit issued an Order dismissing Smith's appeal. See Doc. 75.

**B.** **Statement of the Relevant Facts**

1. Offense Conduct

The government and Smith, through the advice of his counsel, agreed and stipulated to the following facts, which satisfy the offense elements. These were the facts submitted for purposes of Smith's guilty plea. They do not necessarily constitute all of the facts in the case.

    a.    On or about March 31, 2017, a police officer with the Greeneville, Tennessee Police Department responded to a report of two males passed out in a vehicle at the Murphy's Station fuel island. The defendant, Justin Christopher Smith, was in the passenger seat, while another male was in the driver's seat. The officer was eventually able to awaken the men, The officer asked the defendant to step out of the vehicle, and the defendant

complied. At that time, the officer noticed that the defendant appeared to be under the influence of a controlled substance. The defendant was placed under arrest for public intoxication. The other occupant of the vehicle was also placed under arrest for public intoxication. While searching the car, which was a Mazda 3 rented to the defendant, the officer located a Taurus P738, .380 caliber semiautomatic pistol in the passenger side floorboard where defendant had been seated. The officer also recovered a plastic bag in the back of the vehicle that was claimed by the defendant, which contained five (5) rounds of .380 caliber ammunition. Additionally, the officer located Suboxone tablets and various items of drug paraphernalia.

b)      The other male in the vehicle with the defendant gave a detailed statement after being advised of his *Miranda* rights. The male stated that the defendant had shown him the pistol earlier and told him that it was "for protection," and that he (the other male) "needed to get one also." This conversation took place in the defendant's driveway in a third party's vehicle. The male also stated that during the police encounter, the defendant had tried to convince him to claim that the gun belonged to him because the defendant is a convicted felon.

c)      The defendant admits that, at the time he possessed the firearm, the defendant knew he had been convicted of a crime punishable by a term of imprisonment in excess of one year. Specifically, the defendant's convictions include:

      i)      Felony Child Abuse, in the Circuit Criminal Court of Pinellas County, Florida; plea entered on or about September 30, 2003 (case no.: 0220119CFANO);

     ii)      Resisting an Officer with Violence in the Circuit Court of Pinellas County, Florida (conviction entered on September 30, 2003 (case no.: 0206599CFANO);

   iii)      Delinquent in possession of a Firearm Circuit Court of Pinellas County, Florida (conviction entered on July 3, 2001 (case no.: 0016414CFANO);

4

| iv) | Robbery Circuit Court of Pinellas County, Florida (conviction entered on September 30, 2003 (case no.: 0206598CFANO); |
|---|---|
| v) | Resisting an Officer with Violence Circuit Court of Pinellas County, Florida (conviction entered on September 17, 2001 (case no.: 0110294CFANO); |
| vi) | Throwing a Deadly Missile At, Within, or Into a Building Circuit Court of Pinellas County, Florida (conviction entered on July 3, 2001 (case no.: 0016411CFANO); and, |
| vii) | Aggravated Stalking Circuit Court of Pinellas County, Florida (conviction entered on July 3, 2001: case no.: 0016412CFAN0. |

d.    The defendant agreed and stipulated that the Taurus P738 firearm that the defendant possessed is a modern firearm had been transported in interstate commerce.

See Doc. 58 at 2-4.

2.    Plea and Sentencing Proceedings

On August 27, 2019, a Change of Plea and Sentencing Hearing was held before District Judge R Leon Jordan. See Doc. 63. Smith pled guilty to Count 1s of the First Superseding Indictment, pursuant to a written Plea Agreement. See Doc. 58. Pursuant to Fed. R. Crim. P. 11(c)(1)(c), the parties agreed that the sentence to be imposed would be contingent on whether the Court found Smith to be appropriate for sentencing under the Armed Career Criminal Act ("ACCA"). The amended plea agreement stated that if Smith was determined to be ACCA appropriate, then his sentence would be the minimum mandatory term of 180 months with 5 years of

5

probation. If Smith was not found to be appropriate for ACCA then he would be sentenced within the advisory guideline range. The PSR indicates that the Smith's Total Offense Level was a 30, in Criminal History Category of VI for a guideline range of 168-210 months. See PSR ¶ 52. Furthermore, in exchange for Smith's guilty plea, the other indicted charge would be dismissed.

As to the objection, the probation department determined as part of the PSR that Smith should be classified as an armed career criminal. See PSR ¶ 53. On February 14, 2019, trial counsel for Smith filed a Notice of Objections to the PSR. See Doc. 45. Smith's trial counsel also submitted a detailed Sentencing Memorandum addressing the issue of ACCA classification as well as other mitigating matters. See Doc. 46. The government filed its Response to the Defendant's Objections. See Doc. 48. The Court then issued a Memorandum Opinion that Smith was, in fact, classified as an armed career criminal. See Doc. 50.

At sentencing, Smith was sentenced to the minimum mandatory sentence under the ACCA of 180 months in the custody of the Bureau of Prisons to be followed by five years of supervised release. See Docs. 74, 63. The Court recommended that the Bureau of Prisons credit the defendant for time spent in custody in the Greene County Criminal Court Case 18CR163 to the extent that time has not been credited toward any other sentence because that case is directly related to the instant offense. This

6

sentence shall be served consecutively to any sentence that may be imposed in Carter County, Tennessee Criminal Court Case 24281; Carter County, Tennessee General Sessions Court Case ST3629-16, and Washington County, Tennessee General Sessions Court Cases 2018CR129869 and 2018CR130604; Greene County, Tennessee General Sessions Court Case 2016CR3443 and in Scott County, Virginia Circuit Court Case Numbers CR12000200-001, CR12000201-001, and CR12000230-001 through CR12000235-001.

A timely Notice of Appeal was filed on September 1, 2019. See Doc. 66.

3.    Appellate Proceeding

Smith appealed his sentencing in a criminal case for being a felon in possession of a firearm. Smith's sentence was enhanced under the Armed Career Criminal Act, which has a minimum sentence of 180 months. The government moved to dismiss based upon the appellate-waiver provision in Smith's plea agreement. Accordingly, the Sixth Circuit granted the government's motion to dismiss on June 12, 2020. See Doc. 75.

## IV. COGNIZABLE ISSUES UNDER 28 U.S.C. § 2255

The function of a § 2255 Motion to Vacate, Set Aside or Correct Sentence is to inquire into the legality of the federal prisoner's detention. See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify

relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required " 'to determine the truth of the petitioner's claims.' " *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, files and record of the case demonstrate that no relief is warranted. See *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir.1999). "Under 28 U. S. C. § 2255, unless the

8

motion and record as constituted show conclusively that relief is not available, an evidentiary hearing should be held." 28 U.S.C. § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 U. S. C. § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See *Andrews v. United States*, 373 U. S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland v. Washington*, 466 U. S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Smith must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See *Kimmelman*, 477 U. S. at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371(1993)(citing *Strickland*, 466 U. S. at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the

9

outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See *Lockhart*, 506 U. S. at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart*, 506 U. S. at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. *Id.*

The familiar two-part test of *Strickland* has been applied by the Supreme Court and the Sixth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance. With regard to the performance prong of the *Strickland/Hill* test, "if a defendant is represented by counsel and pleas guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U. S. 759 (1970). "[T]o prove prejudice, [Smith] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Glover v. United States*, 531 U.S. 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the

Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See *Missouri v. Frye*, 132 S. Ct. 1399 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how *Hill* applies to differing factual settings, the Supreme Court decided *Lafler* and *Frye* and established a constitutional standard applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that, but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

11

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See *Glover v. United States,* 531 U.S. 198, 203–04 (2001) (holding any increase in actual jail time due to sentencing error is prejudicial and remanding to determine if error was due to counsel's deficient performance); *McPhearson v. United States,* 675 F.3d 553 (6th Cir. 2012) (same).

## V. DISCUSSION

As a preliminary matter, Smith respectfully requests that this Court be mindful that *pro se* complaints are to be held "to less stringent standards than formal pleadings drafted by lawyers," and should therefore be liberally construed. *Jamieson v. United States*, 692 F.3d 435 (6th Cir. 2012) (quoting *McAfee v. Overton*, 391 F.3d 710, 712 (6th Cir.2004)); *Estelle v. Gamble*, 429 U.S. 97 (1976)(same); and *Haines v. Kerner*, 404 U.S. 519 (1972)(same).

**Counsel's Failure To: (1) Communicate with Smith and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial; (2) Conduct An Adequate and Independent Pretrial Investigation; (3) Attempt to Negotiate A Favorable Plea Agreement; and (4) Properly Challenge Smith's ACCA Enhancement Deprived Smith of Effective Assistance of Counsel Under the Sixth Amendment of the Constitution of the United States.**

1. Failure to Communicate with Smith and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty As Opposed to Proceeding to Trial

12

Chapter 1, Rule 1.4: Communication of the Tennessee Rules of Professional Conduct states that:

(a)     A lawyer shall:

    (1)     promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

    (2)     reasonably consult with the client about the means by which the client's objectives are to be accomplished;

    (3)     keep the client reasonably informed about the status of the matter;

    (4)     promptly comply with reasonable requests for information; and

    (5)     consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)     A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney.

In this case, Joseph Oren McAfee ("McAfee"), was Smith's retained attorney from pretrial to sentencing. There was not any reasonable communication from the

13

beginning of this case between Smith and McAfee, so that he could effectively participate in his defense. McAfee certainly did not meet the standard as set forth above in Rule 1.4 of the Tennessee Rules of Professional Conduct or any other professional norm for that matter. He failed to reasonably consult with Smith about the means to be used to accomplish his objectives other than push Smith to plead guilty.

McAfee did nothing but convinced Smith to plead guilty from the very beginning, without investigating the facts of this case. Therefore, McAfee was not able to lay out a strategy in Smith's defense.

Adequacy of communication depends in part on the kind of advice or assistance that is involved. In this case, the lack of communication resulted in confusion and misunderstandings concerning both the applicable law and sentencing procedures.

McAfee never discussed any strategy with Smith, instead nor he ever discussed the correct possible outcome of a trial. All he did was set Smith's expectation incorrectly and completely change his mind– persuading Smith that he should plead guilty and accept the government's offer instead. And because Smith was unfamiliar with the federal judicial system and unschooled in federal law, he was forced to wholly rely on his attorney's advice.

14

2. <u>Failure to Conduct An Adequate and Independent Pretrial Investigation</u>

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Neal,* 239 F.3d at 688 (quoting *Baldwin v. Maggio,* 704 F.2d 1325, 1332-33 (5th Cir.1983)). The Supreme Court has explained the governing standard:

> Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, McAfee failed to conduct any kind of a reasonable independent pretrial investigation of his case. McAfee failed to research the case law, interview witnesses or investigate the facts of Smith's case. There was no independent pretrial investigation to challenge the government's case-in-chief. McAfee failed to move the Court for a private investigator to independently investigate his case. There was not any kind of independent pretrial investigation conducted whatsoever to Smith's knowledge except for reading the government's case file and discussing it with the

15

government prosecutor. It is well settled in this circuit that a criminal investigation requires investigators to piece together evidence, often circumstantial and from multiple sources, to prove a defendant's innocence or guilt. See *Sawyer*, 799 F.2d at 1508 ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"(quoting *Strickland*, 466 U.S. at 690-91). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. *Id.*

Here, McAfee persuaded Smith to plead guilty without investigating nor checking the facts of Smith's case. He straight out advised Smith to accept the government's 180-month offer, although the basis for the ACCA enhancement under § 4B1.4 was not challenged. McAfee did not put the government's case to any kind of adversarial test. Had he done so, there is a reasonable probability that Smith would have proceeded to trial or benefited with a significantly less harsh sentence.

Because McAfee's indolence, Smith was unable to obtain the findings that he needed to be fully informed so that he could make an informed decision on whether to plead guilty or proceed to trial. Without this information, he was unable to make an informed decision. As such, he relied on McAfee's erroneous advice to his

16

detriment. McAfee's representation was deficient because Smith was not properly informed of the relevant circumstances and likely consequences of pleading guilty as opposed to standing trial in order to make an informed decision about which course to take.

Because Smith wholly relied on the advice of McAfee, he merely acquiesced to McAfee's advise to answer the district court's questions during the plea colloquy affirmatively. Accordingly, Smith's guilty plea was involuntary and uninformed and his conviction should be vacated so that he may plead anew.

3. Failure to Attempt to Negotiate a Favorable Plea Agreement

When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. See *Lee v. United States*, 582 U.S. ___ (2017). Where a defendant persists in a plea of not guilty, counsel's failure to properly inform him about potential sentencing exposure may constitute ineffective assistance. *United States v. Smith*, No. 96-5385, 1998 WL 136564 (6th Cir. Mar.19, 1998).

To obtain relief on an ineffective assistance claim, Smith ultimately must demonstrate that his attorney's performance was deficient, and that there is a

17

reasonable probability that, but for counsel's deficient performance, he would have proceeded to trial. See *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984) ("*Strickland*"); see also, *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) ("*Lafler*"); *Missouri v. Frye*, 132 S. Ct. 1399 (2012) ("*Frye*"); *Padilla v. Kentucky*, 130 S. Ct. 1473, 1480-81 (2010) ("*Padilla*") ("Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

In *Hill*, the Court considered a *Strickland* claim based on allegations that the petitioner's lawyer had given bad advice that caused him to plead guilty instead of proceeding to trial. While there have been many cases analogous to *Hill*, it has been understood that *Hill* established a rule applicable to other circumstances when lawyers advise their clients at the plea-bargaining stage of the case. Cf. *Lafler*, supra; *Frye*, supra; *Padilla*, 130 S. Ct. at 1485 n.12. For instance, *Hill* has been applied to a case in which a lawyer was found to have provided ineffective assistance of counsel when the defendant rejected a plea deal and proceeded to trial in the face of overwhelming evidence of guilt and lacking any viable defense. See *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

The U.S. Supreme Court decided *Lafler* and *Frye* in an effort to provide guidance in how *Hill* applies to differing factual settings, and established

18

constitutional standard applicable in all of the separate phases of a criminal trial where the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime. In *Lafler*, the Court held that when counsel's ineffective advice led to an offer's rejection, and when the prejudice alleged is having to stand trial, a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual judgment and sentence imposed. In *Frye*, the Court held that the Sixth Amendment right to effective assistance of counsel extends to the consideration of plea offers that lapse or are rejected, and that right applies to "all 'critical' stages of the criminal proceedings."

In this case, it is clear and obvious that McAfee did not have a complete understanding of the relevant circumstances and the likely consequences of this case. More importantly, Smith signed a Plea Agreement pursuant to Rule 11(c)(1)(C) not knowing the complete impact it would have on his case. Because Smith was a layman of the law and unschooled in same, he was forced to wholly trust McAfee's advice. McAfee should have known that it would certainly not be an 180-month sentence had he properly argued Smith's ACCA enhancement. In essence, the government's Plea

Agreement was skewed in favor of the government and did not have any benefit for Smith. It was a fast way for his attorney to dispose of the case and move on.

In this case, Smith pled guilty to Count 1s of the First Superseding Indictment: Felon in Possession of a Firearm. Under federal law, the crime of Felon in Possession of a Firearm is a Class D felony, punishable by up to ten years in prison, three years of supervised release, and $250,000 in fines. However, the Armed Career Criminal Act (ACCA), 18 U.S.C. 924(e), mandates a minimum 15-year term of imprisonment for any person convicted of Felon in Possession of a Firearm if the person has three prior state or federal convictions for violent felonies or serious drug offenses.

It is not reasonable to plead guilty and agreed to a 180-sentence (15-year term) without challenging the prior convictions that increased the statutory required sentence in this case. If not for McAfee's erroneous assessment of Smith's inaccurate judgment of records; failure to secure a favorable Plea Agreement from the government; and incorrect advice, Smith would have opted to proceed to trial or plead guilty without a Plea Agreement (so he can preserve all his rights to appeal) and receive a significantly less harsh sentence.

This present matter is similar to *Lafler* in that Smith was misinformed by McAfee of the likely consequences of pleading guilty rather than proceeding to trial. In fact, there is a reasonable probability that Smith would have proceeded to trial had

20

McAfee not affirmatively misadvised him regarding his case. Smith was forced to wholly rely on McAfee's advice, and based on that advice, plead guilty and netted him a 180-month sentence. Had Smith been properly informed by McAfee, he would have had a correct understanding of the facts, law of the case and likely consequences in order to make an intelligent and informed decision of whether to proceed to trial or to plead guilty without a written Plea Agreement. "It is the lawyer's duty to ascertain if the plea is available, that it would have led to a shorter sentence and entered voluntarily and knowingly. He must actually and substantially assist his client in deciding whether to plead guilty. It is his job to provide the accused an understanding of the law in relation to the facts." *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005). The advice he gives need not be perfect, but it must be reasonably competent. His advice should permit the accused to make an informed and conscious choice. *Lafler*, supra. In other words, if the quality of counsel's advice falls below a certain minimum level, the client's decision whether to plead guilty or proceed to trial cannot be knowing and voluntary because it will not represent an informed choice. *Id.*

McAfee's misrepresentation of material facts, which Smith wholly relied on, constituted deficient performance. He suffered prejudice from McAfee's acts and omissions when he received a 180-month sentence. As such, Smith easily meets

*Strickland*'s two prong test for ineffective assistance of counsel and relief should be granted in the first instance. McAfee's errors in this case were so blatant and flagrant that the Court can conclude that they resulted from a lack of experience, or neglect rather than an informed professional deliberation. He failed his duty to properly advise Smith.

Accordingly, Smith's conviction and sentence should be vacated for relief in the first instance.

### 4.   Failure to Properly Challenge Smith's ACCA Enhancement

As a whole, Smith was prejudiced and received a 180-month sentence when McAfee failed to challenge the following:

a. *Unapproved Shepard Documents*. McAfee did not contest the use of unapproved *Shepard* documents to enhance Smith's sentence.

**Fact:** On February 21, 2019, McAfee argued that Smith's two crimes: Robbery and Resisting Arrest with Violence did not happen on separate occasions [Doc. 46]. In its Memorandum and Order, Judge Jordan stated that, "the Court finds that the defendant's 2002 crimes of robbery and resisting arrest with violence were indeed committed on occasions different from one another for purposes of the ACCA. As the United States correctly observes, the defendant was charged with and pleaded no contest to a charge of robbery, not attempted robbery. He therefore completed the first

22

crime and then admittedly "fled the scene." [Doc. 46, p. 2]. Thus, the subsequent resisting arrest offense would have taken place at a different location. Because the robbery concluded prior to the defendant's flight, he would have had sufficient opportunity to discontinue his criminal conduct after the robbery without necessarily committing the second offense of resisting arrest." See Doc. 50 at 4. However, the Court erred in its contention that Smith admitted that he completed the first crime and "fled the scene." It was not an admission, rather, it was a mere statement obtained by McAfee from the PSR. See PSR ¶¶ 11-12.

See *United States v. Wynn*, 579 F.3d 567 (6th Cir. 2009). In *Wynn*, this court stated that a presentence report isn't an acceptable "*Shepard* document"—that is, not a document courts may use under the modified categorical approach. See *id.* at 576–77.

Without the so-called admission, there is no logical way to prove that Smith's two crimes happened on separate occasions. They have little to no knowledge if Smith was arrested at the crime scene. And, to complicate matters more, Smith had a co-defendant named Anthony Cona, one of them could have still been in the process of robbing when cops came.

See *United States v. King*, 853 F.3d 267, 272 (6th Cir. 2017) (citing *Shepard v. United States*, 125 S.Ct. 1254 (2005) ) (holding that when a guilty plea leads to a

23

conviction for violating a statute with alternative elements, courts look to certain documents in the record to determine whether that conviction qualifies as an ACCA predicate).

See also *Kirkland v. United States*, 687 F.3d 878 (7th Cir. 2012). In *Kirkland*, the defendant had been separately indicted for a burglary and robbery that happened in the same county, on the same day. 687 F.3d at 881, 887. Because the defendant was charged with co-defendants for both offenses, and the record lacked "key information such as the timing and location of the offenses," the Seventh Circuit was unable to determine if the offenses occurred simultaneously or sequentially. If the "*Shepard*-approved" documents before a district court are equivocal as to whether the offenses occurred on the same occasion, the ACCA does not apply.

The burden of proving Smith's two crimes happen on separate occasions rests on the government, and without Smith's so-called admission would leave them with their weakest argument that he was arrested for robbery (not attempted robbery), therefore, the robbery had to be completed before resisting arrest– which proves nothing but an unreliable assumption at most. McAfee should have known about what evidence is and is not allowed to be used. Other circuits declined to enhance defendants under ACCA when the *Shepard* documents are ambiguous, or inconclusive, as to how events unfolded in the crimes at question.

24

Accordingly, Smith's sentence should be vacated and remanded without the ACCA enhancement because the record is inconclusive as to how the events transpired that day (April 17, 2002). Further, had McAfee argued that the Court can only use *Shepard* documents to determine whether that conviction qualifies as an ACCA predicate, Smith would not be classified as an armed career criminal.

b. *Letter to Judge Jordan*. McAfee failed to submit Smith's Letter to Judge Jordan during the Change of Plea/Sentencing Hearing, which contained numerous objections about the appeal waiver and McAfee's conduct. See Exhibit 1. It is essential to note that McAfee admitted that Smith did have a letter to Judge Jordan at sentencing, indicating that he has concerns but McAfee opted not to present it in court. See Exhibit 2.

**Fact:** On August 27, 2019, Smith was scheduled to appear in court for change of plea and sentencing hearing. McAfee refused to submit Smith's letter to the Judge despite his request. Had McAfee complied with Smith's request and submitted the letter for the Judge to read, the Judge would have then been made aware that Smith: (1) was misled by McAfee that the appeal waiver will not ban him from appealing the ACCA enhancement, only his firearm conviction; and (2) did not wish to plead guilty if it would mean that he has to waive his right to appeal his ACCA enhancement.

Because McAfee failed to submit Smith's letter to Judge Jordan, the Court

25

proceeded to sentence Smith in accordance with the Plea Agreement– an agreement Smith never really fully understand because his counsel misinformed him regarding his waiver of appellate rights. In other words, the quality of McAffee's advice falls below a certain minimum level, and Smith's decision whether to plead guilty cannot be knowing and voluntary because it does not represent an informed choice.

Smith argues that it is unenforceable because the Sixth Circuit in *Vowell v. United States*, 938 F.3d 260, 267 (6th Cir. 2019) held that, "an appellate waiver does not preclude an appeal asserting that the statutory-maximum sentence has been exceeded."

c. *Resisting Arrest with Violence is Not a Violent Felony*. McAfee failed to properly argue that resisting arrest with violence is not a violent felony under the the use of force clause when analyzing the least criminalized conduct as defined in *I.N. Johnson v. State*, 50 So. 529 (Fla. 1909).

In this case, the court failed to analyze the least of the acts criminalized under Fla.Stat. § 843.01 before determining whether that offense is an ACCA predicate under the use-of-force clause of § 924(e), when applying the categorical approach. See *Moncrieffe v. Holder*, 569 U.S. 184, 133 S.Ct. 1678 (2013)(under the categorical approach, the court must assume that a Petitioner's conviction rested upon the least of the acts criminalized under the Statute).

26

While true I do understand that the Eleventh Circuit has consistently ruled that resisting arrest under Fla.Stat. § 843.01 was an ACCA predicate. *United States v. Hill*, 799 F.3d 1318, 1322-23 (11th Cir. 2015), citing *United states v. Romo-Villalobos*, 674 F.3d 1246 (11th Cir. 2012). The *Hill* decision adopted the holdings in *Romo-Villalobos* as binding precedent. However, those decisions are not applicable to the arguments I wish to raise for several reasons.

First neither the decision in *Hill* nor *Romo-Villalobos* conducted the "least criminalized conduct" standard as set forth in *Moncrieffe*. Second, the State of Florida cases being analyzed *in Romo-Villalobos* does not define the least acts criminalized under Fla.Stat. § 843.01, but rather such is defined in *Johnson v. State*, 50 So.529 (1909). So therefore, we should argue that according to *Moncrieffe* the court must analyze *Johnson* to determine whether Fla.Stat. § 843.01 can still qualify as a ACCA predicate.

Recently, the Eleventh Circuit has recognized as much, but denied relief after conducting a *Moncrieffe* analysis when considering resisting arrest with violence under Fla.Stat. § 843.01. See *United States v. Deshazior*, 882 F.3d 1352, 1355 (11th Cir. 2018).

Thus, because the decision in *Johnson* has never been analyzed in compliance with *Moncrieffe*, Smith urges the Court to consider the following:

27

A.   Resisting an officer with violence under Fla.Stat. § 843.01 is not a "violent felony" within § 924(e) when analyzing the least criminalized conduct as defined in *Johnson v. State*, 50 So.529, 530 (Fla. 1909)

In *Deshazior*, the defendant argued that resisting an officer with violence being accomplished by "wiggling and struggling" was not a "violent felony" under the ACCA. In support of his claim, *Deshazior* specifically relied on the decision in *State v. Green*, 400 So.2d 1322, 1323 (Fla.Dist.Ct.App. 1981). The *Deshazior* court rejected that claim stating:

> "In *Romo-Villalobos*, we reviewed the Florida cases *Deshazior* has cited. and found that they did not establish that do minimis force, such as wiggling and struggling, was sufficient to establish violence under § 843.01." See *Romo-Villalobo*s, 674 F.3d at 1249-50.

Here, Smith does not wish to rely on the decision in *Green* to support this claim, but rather argue that *Johnson* defines the least criminalized conduct with § 843.01. Of importance to note, the decisions in *Romo-Villalobo*s and *Deshazior* never held that § 843.01 could not be satisfied by the use of de minims force. Rather, the *Romo-Villalobos* court stated:

> "Given the posture in which it was viewing the case [i.e., *Green*], and its repeated references to this posture, we cannot conclude, contrary to *Romo-Villalobos* claim, that de minims force in sufficient to establish violence in § 843.01"

In fact, the *Deshazior* court did conduct the *Moncrieffe* analysis, but again found that the *Green* decision had not established that Fla.Stat. § 843.01 could be

28

satisfied with the use of de minimis force. *Id*. However, the Florida Supreme Court decision in *Johnson*, does establish that Fla.Stat. § 843.01 can be satisfied with the use of de minimis force. Therefore, the court erred when failing to conduct a *Moncrieffe* analysis to consider whether *Johnson* established the least act criminalized under Fla.Stat. § 843.01.

In *Johnson*, the Florida Supreme Court reviewed a conviction for "Knowingly and willfully resisting, obstructing or opposing the execution of a legal process, by offering or doing violence to the person of the officer". *Id*. at 529. The court held that gripping an officer by the hand and preventing him from opening the door of a room was sufficient force to sustain a conviction. It explained:

> The allegation that the defendant gripped the hand of the officer and forcibly prevented him from opening the door for the purpose of making the arrest...necessarily involves...an act of violence to the officer while engaged in the execution of legal process. The force alleged is unlawful, and such in synonymous with violence...*Id*. at 530.[2]

Since then, the Florida District Court of Appeal acknowledged that it was "undisputed that an act of violence occurred" where the Defendant; fleeing from police officers. "put his truck in drive and sped off," and in doing so clipped an officers hand with the truck's rearview mirror. *Yarusso v. State*, 942 So.2d 939, 41

---

[2]

Noteworthy, the charging document in the Florida *Johnson* case failed to use the word "violence", the Florida Supreme Court held that it was sufficient that the facts stated in the charging document "amount[ed] to violence." *Id*.

(Fla.Dist.Ct.App. 2006). Recently, the Tenth Circuit Court of Appeals has held that in light of *Johnson* and *Yarusso* that the offense of resisting arrest with violence under Fla.Stat. § 843.01 was not a 'violent felony' within the elements clause or the ACCA. Where the minimum culpable conduct Criminalized by Fla.Stat. § 843.01 was not similar to the forcible conduct required under *Johnson I*.[3] See *United v. Lee*, 701 Fed.Appx. 697 (10th Cir. 2017).

In *Lee*, the Court held that Florida resisting arrest with violence under Fla.Stat. § 843.01 is not an ACCA predicate. *Lee*, 701 Fed.Appx. at 701 (*having compared the minimum culpable conduct criminalized by § 843.01 to similar forcible conduct deemed not to involve violent force, we conclude that a conviction under § 843.01 does not qualify as an ACCA predicate."); *Id.* at 702 ("[W]e hold that a conviction under § 843.01 does not qualify as an ACCA predicate..."). In doing so, the Tenth Circuit disagreed with the Eleventh Circuit's analysis of Fla.Stat. § 843.01 in *United States v. Romo-Villalobos*, 674 F.3d 1246 (11th Cir. 2012), stating that the Court must "consider only the 'minimum conduct criminalized', not the typical conduct punished." *Id.* at 700 n.1 (citing *Moncrieffe v. Holder*, 133 S.Ct. 1678, 1685 (2013)). The analysis in *Lee* takes into account all of the pertinent Florida and United States

---

[3] See *Johnson v. United states*, 559 U.S. 133 (2010) (*Johnson I*).

30

Supreme Court case law that demonstrates that Fla.Stat. § 843.01 is not a "violent felony" within the elements clause of § 924(e).

To determine the minimum conduct criminalized under Fla.Stat. § 843.01, this court is bound to follow the interpretation or the offense elements decided by the Florida Supreme Court in *Johnson. United States v. Rosales-Bruno*, 676 F.3d 1017, 1021 (11th Cir. 2012)(holding that "we are bound by a Florida Supreme Court's determination and construction of the substantive elements of a State Offense and the court may deference to a State's intermediate courts, where no Supreme Court precedent exists), citing *Johnson I*, 559 U.S. at 140.

Thus, because resisting arrest with violence is not a "violent felony" under § 924(e) when considering the least criminalized conduct as defined in *Johnson*. The Court should find that a remand is warranted in this case.

Accordingly, Smith contends that McAfee failed to properly challenged his ACCA enhancement, which increased Smith's mandatory sentence from up to ten years in prison to a mandatory minimum of 15 years.

Because Smith does not have the required number of predicate convictions that would qualify him as an armed career criminal, Smith's sentence and conviction must be vacated for resentencing. Without the ACCA enhancement, Smith's Total Offense Level would be level 21 (after a three-level reduction for acceptance of

responsibility), in Criminal History Category of VI, yielding an advisory guideline range of 77 to 96 months, a significantly less harsh sentence.

### B.     <u>Smith's Sentence Exceeds the Statutory Maximum of 10 Years Due to A Misapplied ACCA Enhancement.</u>

The District Court erred when it relied on a "so-called" admission of guilt that Smith fled the scene of his robbery charge before resisting arrest. This "so-called" admission came from McAfee's Sentencing Memorandum, which in fact is not an admission but a mere quotation of the PSR's narration of events. See Doc. 46 at 2; PSR at pages 11-12.

Neither the PSR, nor a Sentencing Memorandum is approved *Shepard* evidence. Other circuits have declined to enhance a sentence when the *Shepard* documents are inconclusive or ambiguous as to how event unfolded. See *United States v. King*, 853 F.3d 267 (6th Cir. 2017). Therefore, to even consider this false admission is a clear error. Without the commission of this error, the government has not met its burden of proving that Smith's two crimes happen on separate occasions.

### VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Smith's sentence must be vacated for resentencing. In the alternative, an evidentiary hearing should be held so that Smith may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

32

Respectfully submitted,

Dated: June 3, 2021

_Justin C. Smith_

JUSTIN CHRISTOPHER SMITH
REG. NO. 53312-074
FCI COLEMAN MEDIUM
FEDERAL CORR. INSTITUTION
P.O. BOX 1032
COLEMAN, FL 33521
Appearing *Pro Se*

33